# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: September 8, 2021

```
* * * * * * * * * * * * *
CHARLES W. MORRILL,              *           Unpublished
                                 *
              Petitioner,        *           No. 18-910V
                                 *
v.                               *           Special Master Gowen
                                 *
SECRETARY OF HEALTH              *           Final Attorneys' Fees and Costs;
AND HUMAN SERVICES,              *           Reasonable Basis.
                                 *
              Respondent.        *
* * * * * * * * * * * * *
```

*Jimmy A. Zgheib,* Zgheib Sayad, P.C., White Plains, N.Y., for petitioner.
*Mollie D. Gorney,* U.S. Dept. of Justice, Washington, D.C., for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On May 17, 2021, Charles W. Morrill ("petitioner"), filed an application for final attorneys' fees and costs. Petitioner's Fee Application ("Fee App.") (ECF No. 70). For the reasons discussed below, I **GRANT** petitioner's motion and find that a reasonable final award of attorneys' fees and costs is $48,219.06.

## I.     Procedural History

On June 26, 2018, Charles W. Morrill ("petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] Petitioner alleged that as a result of receiving an influenza ("flu") vaccination on October 5, 2017, he developed a right Shoulder Injury Related to Vaccine Administration ("SIRVA"). Petition (ECF No. 1). The petition was

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims. The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. **This means the opinion will be available to anyone with access to the Internet.** Before the opinion is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.** *Id.*

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

accompanied with medical records.  Petitioner's Exhibits ("Pet. Exs.") 1-11 (ECF No. 5,6).  The case was initially assigned to the Special Processing Unit ("SPU").

On May 14, 2019, respondent filed the Rule 4(c) report recommending against compensation.  Respondent's ("Resp.") Report ("Rept.") (ECF No. 25).  Respondent stated that petitioner had not established that he received a covered vaccine in his right shoulder.  Resp. Rept. at 5.  Respondent observed that on the same day petitioner received a flu vaccination, October 5, 2017, he also received the Pneumovax 23 vaccine, which is not covered by the Vaccine Act.  *Id.* at 5.  Respondent noted that the vaccine administration record documented that petitioner received the flu vaccination in his *left* shoulder and the non-covered Pneumovax-23 in his right shoulder.  *Id.*

On July 18, 2019, former Chief Special Master Dorsey held a status conference informing petitioner that she could not find in favor of petitioner based on the existing record, but a fact hearing which included testimony from the vaccine administrator and petitioner's treating physician, Dr. Burrows, would be necessary to resolve which arm the covered vaccine was administered in.  Scheduling Order-Special Processing Unit (ECF No. 27).  Respondent's counsel agreed with the possibility of a fact hearing in this case to resolve the site administration issue.  *Id.* at 2.  Petitioner's counsel was ordered to file a status report regarding the availability of witnesses for a fact hearing.  *Id.*

On July 31, 2019, petitioner filed a status report providing dates that witnesses would be available to testify for a fact hearing in the above-captioned cased.  Pet. Status Rept. (ECF No. 28).  Additionally, petitioner's counsel identified other witnesses that may be necessary to testify at the fact hearing, specifically a former medical assistant who was an author of petitioner's medical records and a current medical assistant who also made notations in petitioner's medical records.  *Id.* at 1-2.

On August 7, 2019, former Chief Special Master Dorsey held another status conference in the above captioned case.  Scheduling Order-Special Processing Unit (ECF No. 29).  During this status conference, petitioner made a request to subpoena the Walmart records and any computer database information from the pharmacy regarding petitioner and requested to depose witnesses that could provide relevant testimony regarding the administration of petitioner's vaccination and the accuracy of his medical records.  *Id.* at 2.  Petitioner was ordered to provide a tentative schedule for deposing the witnesses and file any additional records relating to petitioner's October 5, 2017 vaccinations.  *Id.* at 2-3.

On September 20, 2019, petitioner filed subpoenaed records from Wal-Mart pharmacy and email correspondence between petitioner and his primary care physician, Burrows Family Practice.  *See* Pet. Exs. 19-20 (ECF No. 32).  On September 23, 2019, the parties filed a joint status report, where respondent identified two additional witnesses for depositions and the parties requested that respondent file a motion to issue a subpoena to Wal-Mart Stores, Inc., for the outstanding documents and information regarding petitioner's vaccination record.  Joint Status Rept. (ECF No. 33).  The parties also proposed three additional dates for depositions.  *Id.* at 3.

On November 26, 2019, this case was reassigned to my docket. Order Reassigning Case (ECF No. 38). I held a status conference on April 28, 2020, where the parties explained that their position has yet to change and both parties wanted to move forward with the depositions of the previously identified witnesses. Scheduling Order (ECF No. 41). I ordered the parties to file a joint status report proposing dates for depositions and that petitioner filed updated medical records with certification that all the petitioner's medical records have been provided. *Id.* at 2.

On July 13, 2020, the parties filed a joint status report providing dates for which depositions were to occur with the different witnesses. Joint Status Report (ECF No. 43). I granted petitioner's motion to issue subpoenas for the witnesses and requested that the parties file the transcripts of the depositions when made available. *See* Order Granting Motion to Issue Subpoena (ECF Nos. 47-49).

On November 2, 2020, respondent filed the deposition transcripts of the witnesses. *See* Notice of Filing Deposition Transcripts (ECF Nos. 52-55). On March 24, 2021, I held another status conference in the above-captioned case. *See* Status Conference Order (ECF No. 61). After discussing the case with the parties, petitioner filed a motion to voluntarily dismiss his petition. Pet. Motion to Voluntarily Dismiss (ECF No. 62). I granted petitioner's motion on March 25, 2021 and judgment entered on March 29, 2021. Dismissal Decision (ECF No. 63); Judgment Entered (ECF No. 65).

On May 17, 2021, petitioner filed a motion for final attorneys' fees and costs, requesting a total of $43,294.40 in attorneys' fees and $3,690.26 in attorney's costs. Fees App. at 1. On June 1, 2021, Respondent filed a response to petitioner's motion opposing petitioner's motion, stating that petitioner lost reasonable basis for his claim on September 4, 2020 and that he is not entitled to recover fees and costs after September 4, 2020. Resp. Response at 1. Petitioner filed a reply to respondent, stating that, "….this claim maintained reasonable basis until the March 24, 2021 status conference….All work performed therefore consists of tasks done to "wrap up" the case, and fees for such work are reasonable and compensable. Pet. Reply at 1. Petitioner also noted that "…at no point after the September 4, 2020 depositions of the Wal-Mart witnesses did respondent's position change. Respondent still sought to depose the three witnesses from Burrows Family Practice. In fact, respondent's counsel took the lead on these depositions, split the deposition cost of transcripts, and filed the transcripts in this case." *Id.* at 6.

This matter is now ripe for adjudication.

## II.   Evidence Filed

### A.  Medical Records

On October 5, 2017, petitioner presented to the pharmacy at the Wal-Mart at 2753 E. Eastland Center Drive in West Covina, California to receive the Fluzone and Pneumovax 23 vaccines. Pet. Ex. 2; Pet. Ex. 3. Petitioner filled out the Vaccine Administration Record and Consent Form Section A and signed Section C of the form. Pet. Ex. 3 at 3. Section B and Section D were filled out by the administering pharmacist, Ms. Buulinh Chao. *Id.* Section D provides a table in which the vaccine, lot number, expiration date, manufacturer, dosage, site

(LA/RA), route (SQ/IM), Vaccine Information Statement ("VIS") date and the recording pharmacists initials.  *Id.*  In the Vaccination Administration Record and Consent Form for petitioner, it provides that petitioner receiving the Fluzone, made by Sanofi Pastor, the dosage was 0.5 ml and the "left-arm" was circled as site administration, the vaccine was administered intramuscularly and that the VIS date was August 7, 2015.  *Id.*  Further, the Vaccination Administration Record and Consent Form provides that petitioner also received the Pneumovax-23 vaccine, with a lot number of N010109, with an expiration date of 11/25/18, made by Merck, the dosage was also 0.5 ml and it was administered intramuscularly on the right arm.  *Id.*

Important to this case is the other Adult Vaccine Administration Record also produced by the Wal-Mart pharmacy at 2753 E. Eastland Center Dr. in West Covina, CA, which appears to be two computer printed stickers that are on a document titled, "Adult Vaccine Administration Record," which indicate that petitioner received the Pneumovax-23 vaccine on October 5, 2017 and the Fluzone HD on the same day.  Pet. Ex. 2 at 2.  On the sticker, however, there is handwriting, which provides: "IM/LA" on the Pneumovax-23 vaccination sticker and "IM/RA" on the Fluzone vaccination sticker.  *Id.*  There are also initials under the handwriting which belong to Mr. David Huynh.

An immunization record for the Burrows Family Practice, Inc., dated January 11, 2018, provides petitioner received the "Influenza, high dose seasonal," on October 5, 2017 in the right deltoid at the Wal-Mart pharmacy.  Pet. Ex. 6 at 224.  Under the "Side Effects" column, on the same line as the "Influenza, high dose," vaccination it provides, "persistent R deltoid appointment."  *Id.* Further, the same record also indicates that petitioner received the Pneumococcal-13 on November 6, 2017 at the Wal-Mart pharmacy.  *Id.*

On January 22, 2018, petitioner had an appointment with his primary care physician, Dr. Oliver Burrows, for an annual wellness visit.  Pet. Ex. 6 at 19.  In the "History of Present Illness" section on the medical record, it provides, "Pt also states that in November he received his 2nd pneumonia shot and the girl at UCC gave him the shot on the upper right deltoid and has been having pain ever since."  *Id.*  In the "Review of Systems," section of the visit, it was noted that petitioner had "rt deltoid pain x few months."  *Id.*

On January 29, 2018, petitioner had an x-ray of his right shoulder.  Pet. Ex. 6 at 33.  The x-ray revealed mild right glenohumeral degenerative joint disease changes.  *Id.*

On February 5, 2018, petitioner returned to Dr. Burrows for a blood-pressure follow-up and also complaining of shoulder pain.  *Id.* at 22.  In the History of Present Illness, it provided, "Shoulder pain: Pt is also here due to Rt shoulder pain x years, Pt recently had an x-ray of the Rt shoulder on 1/29/18 through Hill Imaging and Doc recommended a cortisone shot to area if patient wanted."  *Id.*  During the physical exam, petitioner demonstrated decreased and abnormal range of motion with generalized pain of his right shoulder.  *Id.* at 23.  He was diagnosed with primary osteoarthritis of the right shoulder.

On May 3, 2018, Ms. Chao created a Vaccine Adverse Event Reporting System ("VAERS") record on behalf of petitioner.  Pet. Ex. 22 at 6.  The VAERS record provides that petitioner's date of vaccination was October 5, 2017 at the Walmart pharmacy and that the

vaccine associated with the adverse event was the influenza vaccine, lot number U1832AC, administered intramuscularly in the "left arm." *Id.* at 12. Under the description of the adverse event, the VAERS record states, "I was contacted by his attorney on 5/3/2018 that his client, [petitioner] is experiencing limited range of motion on his shoulder, pain, and inflammation. He is currently being treated by an orthopedic." *Id.*

On May 16, 2018, petitioner called Dr. Burrow's office requesting to speak to Dr. Burrows about "the flu shot." Resp. Ex. G at 10. In an email to Dr. Burrows from Jaime Enriquez, it states, "Pt called and said he wants to speak to you regarding flu shot-his last appointment 02/05/18 R arm was where flu shot was injected not L arm. Wanted to clarify with you." *Id.*

Petitioner had an appointment with Dr. Burrows on June 7, 2018. Pet. Ex. 21 at 23; Resp. Ex. G at 13. Under General Examination, the record states, "Shoulder: abnormal and right shoulder still [decreased] ROM and generalized pain, can't go beyond 90% and feels burning pain, Tylenol helps some [takes periodically] this pain in right shoulder has been an issue since flu shot injection at pharmacy last fall, patient specifically asked for shot in right shoulder rather than left because he had left shoulder pain at the time and didn't want to accentuate any possible pain at that time of his left shoulder.....patient remembers a lot of pain at the time of injection." Pet. Ex. 21 at 24; Resp. Ex. G at 14.

On June 11, 2018, in an internal communication from Jaime Enriquez to Dr. Burrows, it requests that petitioner's "History of Present Illness" is edited "in regards to the shot location, rec'd flu vs. pneumo and the notes need to state this clearly." Resp. Ex. G at 16. Dr. Burrows responded with the following message, "SORRY CAN'T DOCTOR THE NOTE BUT MY LAST NOT [*sic*] 6-7 HAS A GOOD EXPLANATION OF THE SITUATION." *Id.*

## B. Depositions

### 1. Deposition of Ms. Buulinh Chao

On September 4, 2020, vaccine administrator, Ms. Buulinh Chao, was deposed. Resp. Ex. C. During her deposition, Ms. Chao explained that she worked as a pharmacist at the San Bernardino Walmart for approximately seven years. Resp. Ex. C at 8. She testified that when an individual is to receive two vaccines, one vaccine will be given in each arm and that the "flu is normally given on the left side." *Id.* at 16.

During the deposition, she reviewed the vaccine consent form, Petitioner's Exhibit 3, and stated that the person receiving the vaccines fills out section A, B, and C and section D on the form is filled out by the pharmacist. *Id.* at 18. She explained that section D on the form is filled out "right after we give the immunization." *Id.* She also testified that she was the pharmacist who filled out section D on the petitioner's vaccine consent form in Exhibit 3. *Id.* at 22. Ms. Chao stated that section D indicates that petitioner received the flu shot intramuscularly in the left arm and the pneumovax vaccine in the right arm. *Id.* at 24. She stated that when administering two shots, she will give the shots first and then fill out Section D. *Id.* at 25. Ms. Chao clarified that she fills out section D on the consent form after administering the vaccines

"so that we know which one I had given right after I give the vaccination." *Id.* at 35. She stated that there is approximately one minute between administering the vaccines and filling out section D. *Id.* Ms. Chao explained that in this case, she had placed the label for the influenza vaccine on the Vaccine Consent Form and hand wrote the manufacturer information, dosage and VIS prior to giving the vaccinations. *Id.* at 36. When petitioner's counsel asked her if she was being consistent by stating that she filled out the vaccine information (manufacturer, dosage, VIS, Lot number) prior to administering the vaccines, she clarified that she filled out the site column (which indicates which arm each shot was given in) after administering both vaccines. *Id.* at 37.

Ms. Chao also explained that upon receiving the vaccines, a patient will receive an immunization card, about the size of a credit card. After reviewing Petitioner's Exhibit 2, which is the printed sticker called "Adult Vaccination Record," Ms. Chao stated that she did not fill out this administration record. *Id.* at 25. Ms. Chao identified the initials on Exhibit 2 as belonging to Mr. David Huynh, another pharmacist at Walmart. *Id.* at 26. She noted that Exhibit 2, which has Mr. Huynh's initials, noted that the pneumonia shot was given in the left arm intramuscularly and the flu shot was administered in the right arm. *Id.* at 28. Ms. Chao testified that she was not at the pharmacy when Mr. Huynh filled out the sticker vaccination record but opined that he had filled out the site administration section incorrectly. *Id.* at 67.

Ms. Chao also testified that the petitioner in this case had not complained of any pain or issue following the vaccination until she was contacted by petitioner's attorney on May 3, 2018. *Id.* at 45. She stated that she filled out a VAERS form on behalf of petitioner, but after being contacted by an attorney. *Id.* at 50-55. Ms. Chao explained that when she was filling out the VAERS report she referenced the Walmart computer to determine which site she administered the flu vaccine. *Id.* at 75.

## 2. Deposition of Mr. David Huynh

On September 4, 2020, Mr. David Huynh was also deposed by remote video conference. Resp. Ex. D. Mr. Huynh testified that he began working as a pharmacist for Walmart around November 2017 and he has been a pharmacist for three years. *Id.* at 7. Referencing Exhibit 2, Mr. Huynh explained that if a patient requests a vaccination record, "instead of writing down what vaccination [and] what date he is receiving it, I would print out that medication label and then stick it on the vaccination form." Resp. Ex. D at 10. He stated that the label does not actually provide the date the label was printed, but it does provide the date the vaccination was given. *Id.* at 11.

Mr. Huynh confirmed that the handwriting on Exhibit 2 was his. *Id.* at 12. He stated that he had filled out information "IM LA" and "IM RA," on the label, but that he did not actually administer the vaccines to the petitioner. *Id.* at 12. He explained that typically vaccine consent form was "stored under the workstation," and he would be able to reference the vaccine consent form if a patient came back and asked for the record. *Id.* at 13. Mr. Huynh reiterated that typically he follows what is written on the vaccine consent form and copies it to the label, but that he could have gotten the administration site mixed up." *Id.* at 17.

Mr. Huynh also testified that he printed the label out for petitioner after the vaccines in question were administered on October 5, 2017. *Id.* at 14. He stated that he believes "it was around mid-November," when the label was printed, but he did not remember giving the document to the petitioner. *Id.* at 14.

### 3. Deposition of Alisha Calderon

On September 11, 2020, the parties deposed Ms. Alisha Calderon at 10:10 AM. Resp. Ex. E. Ms. Calderon was a medical assistant who worked with Dr. Burrows. *Id.* at 8. She stated that while working with the Burrows Family Practice, her job duties included front-office and back-office medical assistant. *Id.* at 11. She stated that the role of a back-office assistant is to take patients vitals, prepare the patient's chart for the doctor, and assistance with any procedures. *Id.* Ms. Calderon explained that she would take patient's blood pressure, temperature, take down the chief complaint, and prep the patient for any vaccines needed to be given, then administer vaccines. *Id.* at 12. She explained that she would take an oral history from the patient regarding their general health. *Id.* at 17. When a patient was giving their general history, she would be inputting the notes into the system. *Id.* at 22. She stated that she would input the notes at the same time because "it's their words," and it would be more accurate to do at the same time. *Id.*

During the deposition, Ms. Calderon was asked to review the medical record from petitioner's appointment on January 22, 2018. at 32; Pet. Ex. 6 at 18. She explained that a medical assistant like herself would fill out the section "History of Present Illness." Resp. Ex. E at 36. She stated that she would gather the information from the patient and input into the section as they were talking. *Id.* She stated that petitioner had blood work done about a week prior to the appointment and that the results were going to be discussed at the January 22, 2018 appointment. *Id.* at 37. She testified that she wrote the information about petitioner receiving the pneumonia shot based on the information he was providing. *Id.* Specifically, she stated, "But the shot, I wouldn't have written that had he not told me." *Id.* at 38. She also stated that the petitioner only told her about the pneumonia shot on that day and had never mentioned the flu shot. *Id.* at 42. She also testified under the section "Review of Systems," she would fill it out. *Id.* at 47. She stated that petitioner was complaining of right deltoid pain and he indicated that he got the shot in November, which is what she inputted into the document. *Id.* During cross examination, Ms. Calderon reiterated that petitioner never reported that he had received the flu vaccine on the same day as the pneumonia vaccine. *Id.* at 54.

Later, when Ms. Calderon was asked to examine petitioner's vaccination record from the Burrow's Family Practice in Exhibit 6, she acknowledged that the record indicates that petitioner received a flu vaccine from the Wal-Mart pharmacy on October 5, 2017. *Id.* at 66; Pet. Ex. 6 at 223. She also acknowledged that where petitioner received the vaccines from was different from what was recorded in his medical appointment record from January 22, 2018. *Id.* at 67. However, she also pointed out the vaccination chart from the Burrows Family Practice records that the date the flu vaccine was administered was on October 5, 2017 and that he received the pneumococcal vaccination on November 6, 2017, which conflicts with the Walmart vaccination records, indicating that petitioner received both vaccinations on the same day, October 5, 2017. *Id.* at 68. Further, Ms. Calderon noted that Burrows Family Practice immunization record indicates that the "site" of the flu vaccine was in the right-arm and it does not indicate which arm

7

he received the pneumococcal vaccine in.  *Id.* at 67-8.  When asked if it was possible that she recorded the information in the "History of Present Illness," incorrectly in the medical record from the January 22, 2018 encounter with petitioner, she responded, "Yes."  *Id.* at 71.

### 4.  Deposition of Jaime Enriquez

On September 11, 2020, at 12:53 pm, the deposition of Ms. Jaime Enriquez was taken via video conference.  Resp. Ex. F.  She testified that she began working as a medical assistant with Burrows Family Practice in 2016.  *Id.* at 7.  She stated that the medical assistants in the office check-in patients, process co-pays, bring patients to exam rooms, take vitals, and document chief complaints.  *Id.* at 10.  Ms. Enriquez also stated that the office is updated about vaccinations patients received through patient testimony, faxes received from a pharmacy or urgent care facilities or through an RX hub which shows medications prescribed or shots documented by other physicians or pharmacists.  *Id.* at 14.  However, she noted that Walmart does not send faxes with proof of vaccination, so if a patient is vaccinated at Walmart, the information is reported by the patient.  *Id.* at 23.

During the deposition, Ms. Enriquez stated that the petitioner had called the Burrows Family Practice on May 16, 2018 and "informed us that the documentation that was initially entered into his record was incorrect and he insisted that his immunization record be updated."  *Id.* at 25.  She stated that the immunization record from Burrow Family Practice initially indicated that petitioner received his flu shot in the left arm.  *Id.* at 27.  She explained that petitioner had called and wanted the immunization record to be changed, and so she changed the record.  *Id.*  Ms. Enriquez stated that the electronic medical records would show a time-stamp when the record was changed, but when the records are printed out, the time-stamp of when the record was changed, would not appear.  *Id.* at 29.

She explained that when petitioner called the doctor's office requesting the record to be changed, he "was not happy….Was upset, insisted that the medical records be changed."  *Id.* at 29.  Ms. Enriquez stated that petitioner actually came into the office and stood and watched while she made the change to his record [to indicate that he received the flu shot in his right arm].  *Id.*  She clarified that the immunization record, which appears at Exhibit 6 on page 223, was amended on May 17, 2018 after petitioner called and appeared in the Burrows Family Practice office asking the record be changed.  *Id.* at 34-5.  Ms. Enriquez testified that she personally made the change to petitioner's immunization record.  *Id.* at 35.

During cross examination, Ms. Enriquez explained that petitioner also asked that the record from January 22, 2018 be modified as well, but that was not changed.  *Id.* at 38.  She stated that she received a phone call from a lawyer's office on June 11, 2018 asking that the History of Present Illness be modified.  *Id.* at 44.  She also testified that she attempted to fill out a VAERS report on May 17, 2018.  *Id.* at 46.  The VAERS report was for an "adverse reaction to the seasonal flu shot," but she was unable to complete it because she could not obtain the lot number for the vaccine petitioner received.  *Id.* at 47, 49.

### 5.  Deposition of Dr. Oliver Burrows

On the same day, September 11, 2020 as Ms. Calderon and Ms. Enriquez were deposed, the parties also deposed petitioner's primary care physician, Dr. Oliver Burrows.  Resp. Ex. H.

Dr. Burrows testified that he had treated petitioner for approximately ten years.  Resp. Ex. H at 21.  He explained that when a patient comes in, the medical assistant fills out the section on the medical appointment record titled, "History of Present Illness."  *Id.* at 24.  He stated that generally, that is standard procedure for him to review the "History of Present Illness" section before meeting with a patient.  *Id.* at 25.  He testified that he would repeat the History of Present Illness back to the patient when he comes into the examining room.  *Id.* at 25-26.

When Dr. Burrows was asked to review petitioner's medical record from the appointment from January 22, 2018, he stated that he did not add anything to the record.  *Id.* at 27.  Dr. Burrows indicated that if a patient of his called and asked for a medical record to be changed, he would "leave the original note alone and then just have an addendum afterwards."  *Id.* at 32. When asked if he had any direct contact with petitioner about seeking changes to the medical records, Dr. Burrows stated that he had not personally met or talked to petitioner about changing the medical records.  *Id.* at 44-45.

Dr. Burrows stated that it was possible that his staff recorded which vaccine caused petitioner's right arm to hurt in the January 22, 2018 "History of Present Illness," section.  *Id.* at 55.  He also stated that it was possible that Walmart could have "switched arms."  *Id.*  However, he also stated that he did not know if petitioner really knew which shot went into which arm at the time of vaccination.  *Id.* at 55.

## III.   Discussion

### A.  Good Faith

#### 1.  Legal Standard

Petitioners are entitled to a presumption of good faith as is the government.  *Grice v. Sec'y of Health & Human Servs.,* 36 Fed. Cl. 114, 121 (1996).  Without evidence of bad faith, "petitioners are entitled to a presumption of good faith."  *Grice,* 36 Fed. Cl. at 121.  Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner v. Sec'y of Health & Human Servs.*, 2007 WL 4410030, at *5.  The good faith requirement has been described as "a subjective standard that focuses upon whether petitioner honestly believe he had a legitimate claim for compensation."  *Turner,* 2007 WL 4410030, at *5.  Black's Law Dictionary explains that bad faith involves conduct indicating "dishonesty or belief, purpose, or motive."  Black's Law Dictionary (11th ed. 2019).

Cases that have evaluated good faith and found it lacking, involved demonstrations of the petitioner's knowledge that the alleged vaccine injuries had more likely alternative causes, such as child abuse; their refusal of further vaccinations; their communications with counsel and experts; and their conduct in prosecuting claims once they are filed.  *Heath v. Sec'y of Health &*

*Human Servs.,* No. 08-86V, 2011 WL 4433646 (Fed. Cl. Spec. Mstr. Aug. 25, 2011); *Moran v. Sec'y of Health & Human Servs.,* No. 07-363V, 2008 WL 8627380 (Fed. Cl. Spec. Mstr. Dec. 12, 2008); *O'dell v. Sec'y of Health & Human Servs.,* No. 89-42V, 1991 WL 123581 (Fed. Cl. Spec. Mstr. June 19, 1991).

However, a petitioner's attorney's conduct may also be relevant when evaluating good faith. *Purnell v. Sec'y of Health & Human Servs.,* No. 18-1101V, 2020 WL 2203712 (Fed. Cl. Spec. Mstr. April 6, 2020). Counsel's duty to investigate the factual basis prior to asserting a claim bears on the question of good faith. *Purnell,* 2020 WL 2203712, at *6; *see also Amankwaa v. Sec'y of Health & Human Servs.,* 138 Fed. Cl. 282, 289 (2018) (explaining, "the effort that an attorney makes to investigate a claim or to ensure that a claim is asserted before the expiration of the statutory limitations period…are properly evaluated in determining whether a petition was brought in good faith.").

In *Crowding,* I found that petitioner lost the presumption of good faith, after petitioner filed medical records that were altered by an office manager and not by a treating physician. *Crowding v. Sec'y of Health & Human Servs.,* 2019 WL 1332797 at *1 (Fed. Cl. Spec. Mstr. Feb. 26, 2019). In that case, the petitioner had asked the office manager to "see whether the records could be amended," and then the office manager, without consulting the treating physician), amended the records. *Crowding,* at *11. After the amended records came into controversy, the petitioner did nothing to clarify her role in generating the amended records, such as submit a supplemental affidavit, participate in a deposition, or even respond to an Order to Show cause. *Id.* Thus, petitioner did nothing to restore the presumption of good faith. Further, petitioner's counsel also lost the presumption of good faith by filing altered medical records without investigating. *Id.* at *14-15.

In another case, Chief Special Master Corcoran found that the presumption of good faith was lost because petitioner herself acted in bad faith. *Purnell-Reid,* at * 7. He found that "the factual basis for petitioner's claim included material alterations and omissions misrepresenting onset, and that she was likely aware of this factual misrepresentation at the time of filing." *Id.* Chief Special Master Corcoran also explained that counsel being unaware of material facts, including the accuracy of medical records and onset of petitioner's alleged injury, was due to the lack of investigation. *Id.*

### 2. Parties' Positions

Respondent asserts that petitioner's claim lost reasonable basis after the deposition of Ms. Chao, the vaccine administration, and therefore "it cannot be said that the claim maintained good faith." Resp. Response at 7. Respondent argues that by September 4, 2020, petitioner's counsel "knew….that the vaccination record forming the basis of the claim was not reliable," yet proceeded to conduct depositions of witnesses who had no information bearing on the site of vaccination. *Id.* at 8. Respondent explained that, "petitioner's claim no longer had a reasonable basis when the Walmart employees testified about their respective completion of the vaccination records, Exhibits 2 and 3. As such, respondent contends that petitioner had no reasonable basis to continue the claim after September 4, 2020, but nevertheless unreasonably continued to pursue it thereafter, which rebuts any presumption of good faith." *Id.* at 8.

In petitioner's reply, petitioner states that respondent incorrectly presumes that "when reasonable basis is lost, good faith automatically follows." Pet. Reply at 6. Petitioner explains, "It is axiomatic that good faith is a subjective standard, reasonable basis is objective, and that good faith is presumed in the absence of bad faith." *Id.* Petitioner also states that, "Respondent fails to identify any evidence of bad faith to overcome petitioner's presumption of good faith." *Id.* Petitioner points out that respondent was also aware that the Burrows Family practice were not involved in the administration of the subject vaccinations and had no firsthand knowledge bearing on the site of vaccination, yet respondent's counsel had also wanted to continue with these depositions, which had been scheduled in accordance with a Court order. *Id.*

### 3. Discussion

The main issue in this case was whether petitioner received the flu vaccine, a covered vaccine, in his right arm, which was the cause of his right shoulder injury. As petitioner noted in his reply, "It is undisputed in this case that on October 5, 2017 at Walmart pharmacy, petitioner received two vaccinations, a flu vaccine and a Pneumovax 23 vaccine, one in each arm, and that he suffered an injury to his right shoulder as a result of one of these vaccinations." Pet. Reply at 2. Petitioner submitted two documents, both produced by the administering Walmart pharmacy, which contain conflicting vaccine administration records which document opposite vaccination sites. *See* Pet. Ex. 2 & 3. Further, petitioner submitted medical records which show that petitioner complained of right shoulder pain and associated the onset of pain with when he received one of the two vaccinations on October 5, 2017. *See* Pet. Ex. 6.

The conflicting vaccination records from Walmart petitioner filed created a question of fact that needed to be further investigated. Further, the medical records from the Burrows Family Practice also contained inconsistencies with respect to the site of administration for the flu vaccine and even the date petitioner received the flu and Pneumovax vaccinations. *See* Pet. Ex. 6 at 18, 223. These records, taken together, demonstrated that further investigation to resolve the factual issue in this case should be taken, and as such, former Chief Special Master Dorsey, granted the parties the opportunity to subpoena and depose the Walmart employees and staff of the Burrows Family Practice.

Moving forward with the depositions of all the parties involved in the medical records at issue did not rise to the level of bad faith. First, even though the depositions of Ms. Chao and Mr. Huynh provided additional detail regarding the vaccination site, they were not dispositive of the main factual issue in this case. In this program, injection site administration is a factual issue that is commonly raised in SIRVA cases. *See Hanna v. Sec'y of Health & Human Servs.,* No 18-1455, 2021 WL 3486248 (Fed. Cl. Spec. Mstr. July 15, 2021); *Stoliker v. Sec'y of Health & Human Servs.,* No. 17-990, 2018 WL 6718629 (Fed. Cl. Spec. Mstr. Nov. 9, 2018); *Mezzacaop v. Sec'y of Health & Human Serv.,* No 18-1977, 2021 WL 1940435 (Fed. Cl. Spec. Mstr. Apr. 19, 2021); and *Desai v. Sec'y of Health & Human Servs.,* No. 14-811V, 2020 WL 4919777 (Fed. Cl. Spec. Mstr. July 30, 2020). Often there are medical records which are incomplete or inconsistent with petitioner's statements or statements made by other uninterested parties in different medical records. As it was explained in *Lowrie,* "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally

consistent." *Lowrie v. Sec'y of Health & Human Servs.,* No. 03-1585V, 2005 WL 611745, at *19 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). Relevant to this case, the Court of Federal Claims observed that, "[i]f a record was prepared by a disinterested person who later acknowledged that the entry was incorrect in some aspect, the later correction must be taken into account." *Murphy v. Sec'y of Health & Human Servs.,* 23 Cl. Ct. 726, 733 (1991) (quoting the decision below), *aff'd per curiam,* 968 F.2d (Fed. Cir. 1992). Therefore, questioning the staff from the Burrows Family Practice regarding the inconsistencies in the petitioner's record was important to resolving the factual issue regarding the site of petitioner's flu shot.

Petitioner in this case did not alter Exhibit 2 and 3, which were produced by the Walmart pharmacy. He had an honest belief that his right shoulder injury was the result of receiving a vaccination, one which he received on October 5, 2017, as evidenced by his statements to his treating physician on January 8, 2018. Petitioner's counsel also did not act in bad faith by continuing to pursue the depositions of the staff from the Burrows Family Practice, as he was not intentionally attempting to deceive the Court; instead, he was doing his due diligence in investigating the underlying factual issues of petitioner's claim.

Finally, petitioner is correct that respondent did not provide any direct evidence of bad faith to rebut the presumption of good faith. Petitioner is also correct that respondent's counsel also sought to move forward with the depositions of the Burrows Family Practice following the depositions of Ms. Chao and Mr. Huynh. After the status conference on March 24, 2021, petitioner's counsel promptly filed a motion to dismiss the petition. In accordance with the above, I find that petitioner did not lose good faith after the September 4, 2020.

## B. Reasonable Basis

### 1. Legal Standard

"Good faith" and "reasonable basis" are two distinct requirements. *Cottingham v. Sec'y of Health & Human Servs.,* 971 F.3d 1337, 1344 (Fed. Cir. 2020); *Simmons v. Sec'y of Health & Human Servs.,* 875 F.3d 632, 635 (Fed. Cir. 2017); *Chuisano v. Sec'y of Health & Human Servs.,* 116 Fed. Cl. 276, 289 (2014)). "Good faith is a subjective test, satisfied through subjective evidence." *Cottingham,* 971 F.3d at 1344. Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner,* 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v.Sec'y of Health & Human Servs.,* No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis...." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Human Servs.,* No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no

reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Human Servs.*, No.99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).

The Federal Circuit has subsequently held that "failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion." *Cottingham*, 971 F.3d at 1345. While the Court in *Cottingham* did not purport to identify all forms of objective evidence, it stated that "objective medical evidence, including medical records… even where the records provide only circumstantial evidence of causation" can support a showing of reasonable basis. *Id.* at 1346 (citing *Harding v. Sec'y of Health & Human Servs.*, 146 Fed. Cl. 381, 403 (Fed. Cl. 2019)). The Court also held that the special master should consider as objective evidence a vaccine package insert, specifically a section titled "Adverse Reactions" which listed several injuries that were also listed in the petitioner's medical records. *Id.* The *Cottingham* Court also reiterated that the reasonable basis determination is still based on a "totality of the circumstances."

In another recent opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. *James-Cornelius v. Sec'y of Health & Human Servs.,* 984 F.3d 1374, 1379-81 (Fed. Cir. 2021). The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *Id.* at 1379 (citing *Cottingham*, 971 F.3d at 1346). When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation. *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds. *R.K. v. Sec'y of Health & Human Servs.*, 760 Fed. Appx. 1010, 1012 (Fed. Cir. March 15, 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376-77 (Fed. Cir. 1994) for the holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis"). "Petitioners' counsel have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham*, 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Human Servs.*, 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 724, 727 (2016)).

## 2. Parties' Positions

Respondent argues that petitioner lost reasonable basis for his claim after the September 4, 2020 depositions. Resp. Brief at 5. Respondent stated that the depositions of the Walmart employees showed that vaccine consent form was filled out directly after the administration of the vaccinations, and at that point, "it became clear that petitioner was unable to support his right

SIRVA claim with the records that had been filed in this case." *Id.* at 5.  Respondent argues that "once petitioner discovered that Ms. Chao actually administered the vaccines and completed the consent form immediately following administration of petitioner's vaccinations and that Mr. Huynh did not administer the vaccinations and completed the vaccine administration record weeks after the vaccinations were given…petitioner's reliance on the record that Mr. Huynh completed was not reasonable and petitioner's claim lost reasonable basis." *Id.* at 6.  Respondent further asserts, "At that point, there was no objective evidence supporting a threshold issue for petitioner's claim." *Id.*

In his reply, petitioner argued that the depositions of Ms. Chao and Mr. Huynh do not demonstrate that reasonable basis was lost, but instead provide more objective support for a feasible claim for recovery.  Pet. Reply at 4.  Petitioner stated that Ms. Chao's deposition revealed that she administered the vaccines in the opposite order for which they were documented on the consent form; she submitted a VAERS report identifying the flu vaccine as the cause of petitioner's injury; and the fact that Ms. Chao only documented the site of administration after both vaccines were administered. *Id.* at 4.  Further, petitioner asserts that Ms. Chao's testimony did not provide any additional objective evidence that the consent form was more reliable than the vaccine administration record completed by Mr. Huynh. *Id.* at 5.  Petitioner again noted that moving forward with the depositions of the Burrows Family Practice employees was not only in compliance of a Court order, but also, consistent with the deposition schedule the parties developed together.

Finally, petitioner argues that his counsel is entitled to attorneys' fees and costs associated with concluding the case. *Id.* at 7.  Petitioner states that after the March 24, 2021 status conference, counsel promptly moved to dismiss the case. *Id.*  Petitioner notes the Vaccine Program has routinely found that attorneys may be compensated for work performed after a matter has lost reasonable basis when such work consists of tasks done to "wrap up" the case. *See Swick v. Sec'y of Health & Human Servs.,* No. 13-526V, 2018 WL 6009290, at *6 (Fed. Cl. Spec. Mstr. Oct. 22, 2018).

### 3.  Discussion

A review of the medical records and deposition testimony filed in this case demonstrates that petitioner maintained reasonable basis after the September 4, 2020 depositions and through the case dismissal.  As noted above, petitioner received two vaccinations on October 5, 2017. Pet. Ex. 3.  He filed two documents, produced by the same pharmacy, which documented different sites where he received the covered flu vaccine.  Exhibit 2 indicated that petitioner received the covered flu vaccine in the right arm and Exhibit 3 indicated that petitioner received the flu vaccination in his left arm. *See* Pet. Ex. 2; Pet. Ex. 3.

Petitioner also filed records from the Burrows Family Practice which also documented that he received the flu vaccination in his right deltoid, consistent with Exhibit 2. *See* Pet. Ex. 6 at 224.  But those records also included notes from the medical assistants that he had received the pneumovax in his right shoulder.  Pet. Ex. 6 at 18.  However, these medical records included other inconsistencies, such as the date when he received the Pneumovax vaccination and where he received the Pneumovax vaccination. *See* Pet. Ex. 6 at 18 (Pt also states that in November he

received his 2nd Pneumonia shot and the girl at UCC gave him the shot on upper Rt deltoid); Pet. Ex. 6 at 223 (noting that petitioner received the Pneumococcal PCV 13 on November 6, 2017 at the Walmart pharmacy).

After petitioner informed his physician that he had experienced right shoulder pain following his vaccinations in October, he consistently associated the onset of his pain to the vaccinations in future medical records.  *See* Pet. Ex. 21 at 24.

The depositions of Ms. Chao and Mr. Huynh provided additional clarity surrounding when and how Exhibits 2 and 3 were created.  However, their testimonies were not dispositive on the issue of site administration, as respondent argues.  Instead, these depositions provided insight as to which record should be afforded more weight.  Further, the testimony of Ms. Enriquez and Ms. Calderon were particularly important to clarify the inconsistencies that appeared in the Burrows Family Practice medical records.  They not only recorded petitioner's symptoms as he recounted them at medical appointments, but they had direct contact with petitioner regarding the accuracy of the medical records.  *See* Resp. Ex. G at 10.  Obtaining testimony to explain inconsistencies in medical records is common practice in the Vaccine Program.  In *Cucuras,* Federal Circuit explained that medical records, in general, warrant consideration as trustworthy evidence.  *Cucuras v. Sec'y of Health & Human Servs.,* 993 F.2d 1525, 1528 (Fed. Cir. 1993).  However, when written records which are, themselves, inconsistent, should be accorded less deference.  *Camery v. Sec'y of Health & Human Servs.,* 42 Fed. Cl. 381, 391 (1998).  Oral testimony that is inconsistent with medical records must be consistent, clear, cogent and compelling to outweigh medical records prepared for the purpose of diagnosis and treatment.  *Camery,* 42 Fed. Cl. 391 (1998).  In this case, the testimony of Ms. Calderon and Ms. Enriquez were clear, cogent, consistent and compelling.  Thus, their explanation regarding the inconsistencies in the Burrows Family Practice medical records, including the different dates and site administration of the vaccines in question, would likely have been afforded more weight than the medical records.

While it appears that the objective evidence filed in this case, does not support petitioner's allegations that he suffered a Table SIRVA, that is not the standard for determining if reasonable basis existed.  Instead, the medical records filed by petitioner, which are objective evidence, created a factual dispute as to whether he received a covered vaccine in his right shoulder.  The depositions of the Walmart employees and the Burrows Family Practice,  were critical to ultimately resolving the case, leading to the petition being voluntarily dismissed.

In accordance with the above, I find that petitioner maintained reasonable basis, even after the September 4, 2020 depositions.

## IV.    Attorneys' Fees and Costs

### a.  Legal Standard

The Vaccine Act permits an award of reasonable attorneys' fees and costs.  §15(e). Section 300aa-15(e)(1) of the Vaccine Act provides that, "[i]f the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or

court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."

As this case was voluntarily dismissed, petitioner's counsel is still eligible for reasonable attorneys' fees and costs.  As discussed above, I find that the petition was brought in good faith with a reasonable basis.

Petitioners "[bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable.  *Wasson v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. 482, 484 (1993).  Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service.  *See Savin v. Sec'y of Health & Human Servs.,* 85 Fed. CL. 313, 316-18 (2008).  Adequate proof of the claimed fees and costs should be presented when the motion is filed.  *Id.* at 484 n.1.  The special master has the discretion to reduce awards *sua sponte*, independent of enumerated objections from the respondent.  *Sabella v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.,* 85 Fed. Cl. 313 (Fed. Cl. 2008), *aff'd* No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

### b.  Attorneys' Fees

Petitioner requests reimbursement for attorneys' fees in the total amount of $43,294.40 for work performed by petitioner's attorneys between 2018 and 2021.  Specifically, petitioner requests that his attorneys, Mr. Jimmy A. Zgheib, Ms. AnnMarie N. Sayad, Ms. Jennifer Sayad, and Mr. Joseph Sayad, be compensated for their work on his case between 2018-2021.

The requested rates for attorneys and paralegal rates for the work performed for 2018-2021 are consistent with the rates awarded in previous decisions by myself and other special masters in the Vaccine Program and are consistent with the OSM Attorneys' Rate Fee Schedule.  *See Gilbert v. Sec'y of Health & Human Servs.,* No. 18-402, 2021 WL 3370811 (Fed. Cl. Spec. Mstr. July 2, 2021); *Quinn v. Sec'y of Health & Human Servs.,* No. 18-965V, 2019 WL 4467128 (Fed. Cl. Spec. Mstr. June 25, 2019).

Petitioner's counsel submitted a detailed invoice outlining the work performed by each attorney and the amount of time performed on each task.  I find that the overall hours spent on this matter to be reasonable.  The entries reasonably and accurately describe the work performed and the length of time it took to perform each task.  Therefore, petitioner shall be awarded attorneys' fees in full.

### c.  Attorneys' costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable.  *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (Fed. Cl. 1992).  In this case, petitioner is requesting a total of $3,427.35 in attorneys' costs.  Petitioner is seeking reimbursement for costs

such as filing the petition, obtaining medical records, postage, and obtaining transcripts.  These costs are reasonable and reimbursable in the Vaccine Program.  As such, petitioner is awarded the requested costs in full.

**V.      Conclusion**

Accordingly, petitioner's motion is **GRANTED** and the following is awarded:

1) **A lump sum amount in the of $48,219.06, representing reimbursement for final attorneys' fees and costs, in the form of a check payable to petitioner and his attorney.**

In absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance herewith.

**IT IS SO ORDERED.**

<u>**s/Thomas L. Gowen**</u>
Thomas L. Gowen
Special Master